# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENWOOD DIVISION

| | |
|---|---|
| Cephus B. Glenn,<br><br>        Plaintiff,<br><br>vs.<br><br>AshTech Corporation,<br><br>        Defendant. | C/A NO.: _____<br><br><br>**COMPLAINT**<br>**(Jury Trial Demanded)** |

Plaintiff Cephus B. Glenn complaining of Defendant AshTech Corporation (AshTech), would respectfully allege and show unto the Court as follows:

## JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

2. The Court has personal jurisdiction over Defendant AshTech because AshTech regularly transacts business in this District.

3. Venue is appropriate in the Greenwood Division of the District Court of South Carolina pursuant to 28 U.S.C. § 1391 and Local Civil Rule 3.01 (D.S.C.) because a substantial part of the events or omissions giving rise to the claim occurred in the Greenwood Division of the District Court of South Carolina.

## PARTIES

4. Plaintiff Cephus B. Glenn is a resident of Newberry County and citizen of the State of South Carolina.

5. Defendant AshTech Corporation (AshTech) is a corporation organized and existing

under the laws of the State of Ohio. Upon information and belief, AshTech's principle place of business is the State of Ohio.

## FACTUAL ALLEGATIONS

6. Sometime prior to August 2016, Norbord Inc. (Norbord), an international producer of wood-based panels, purchased a Submerged Bottom Ash Handling System (hereinafter, "Ash Handler") from AshTech.

7. The Ash Handler was marketed, sold, designed, and manufactured by AshTech.

8. The function of the Ash Handler system is to quench hot ash produced from burning tree bark and wood chips in a large furnace and to collect the ash in a nearby bin so it may be removed. The system consists of a large, water-filled tank with a submerged conveyor belt in the bottom. Ash from the furnace travels through a large chute to the surface of the water in the Ash Handler's tank. As the ash becomes waterlogged, it sinks to the bottom of the tank and is transported to a collection bin by the submerged conveyor belt.

9. At the time of the incident giving rise to this action, the Ash Handler's water tank did not have a lid or top to enclose the water inside the tank. The mouth of the ash chute from the furnace was submerged below the water surface to prevent the hot ash from escaping into the air, but the remainder of the water tank was exposed.

10. When the Ash Handler is operational, the water in the tank is as hot as 160 degrees Fahrenheit—sufficiently hot to cause significant and permanent burn injuries to an individual exposed to the hot liquid. The Ash Handler tank contains no safety devices, such as guard rails, splash guards, or otherwise, which would protect a user in the event of an overflow. The tank contains no warning signage or indicators regarding the safety hazards presented by the scalding liquid inside the tank.

11.     The Ash Handler was installed in a Norbord facility in Lanett, Alabama in late 2006. The Ash Handler was subsequently moved from the Alabama plant to an identical plant in Kinards, South Carolina to be used in the exact same location of the facility, for the exact same purpose.

12.     When the Ash Handler was installed in South Carolina, it was installed pursuant to the specification provided by AshTech, and was in the same condition as it was when it left AshTech's hands.

13.     Following installation of the Ash Handler in South Carolina, AshTech service representatives traveled to South Carolina to inspect the site and Ash Handler. The AshTech representatives determined the Ash Handler was properly installed.

14.     AshTech regularly sold products, including parts and supplies, to the Norbord facility in Kinards, South Carolina, and continues to sell products in South Carolina.

15.     On August 4, 2016, Plaintiff Cephus B. Glenn was working in the Norbord facility in Kinards, South Carolina, washing debris from the area near the Ash Handler with a hose. At the same time Mr. Glenn was working next to the Ash Handler, a large mass of debris suddenly fell out of the furnace, into the Ash Handler's water tank. The mass of debris displaced the scalding water in the tank, causing it to spill out of the tank directly onto Mr. Glenn.

16.     Mr. Glenn was unaware of the hazards presented by the Ash Handler tank and, without any warning, was completely engulfed in 160-degree water. The scalding liquid caused Mr. Glenn to suffer third degree burns over 90% of his body, requiring extensive medical treatment and leaving him with permanent, severe injuries.

17.     Shortly after the incident in which Mr. Glenn was burned as a result of the exposed water tank, Norbord personnel contacted AshTech seeking a design solution to make the Ash

Handler safe for use and ensure a similar incident does not happen again.

18. AshTech's responded by instructing Norbord on how to build and install an enclosure for the tank. Notably, AshTech engineers did not visit the site on this occasion, as the Ash Handler could be made safe by simply providing instructions for construction of a lid for the tank—a simple feature that would have prevented Mr. Glenn's injuries had it been included in AshTech's original design.

19. As a direct and proximate result of AshTech's conduct, Mr. Glenn has suffered intense pain, permanent impairment, loss of enjoyment of life, mental anguish, emotional distress, and medical and hospital bills. He continues to suffer these injuries and damages. Further, Mr. Glenn has lost earnings from his employment and will continue to lose wages and suffer a loss of earning and work capacity.

## FOR A FIRST CAUSE OF ACTION
### (Negligence/Gross Negligence/Recklessness/Willful or Wanton Disregard)

20. Plaintiff incorporates by reference all preceding paragraphs and allegations of this complaint as if set forth here.

21. At all material times, Defendant had a duty to exercise reasonable care in all aspects of the testing, marketing, manufacture, advertising, sale, design, and provision of adequate warnings regarding the Ash Handler.

22. Defendant failed to exercise ordinary care in the design, manufacture, sale, testing, quality assurance, quality control, distribution, and placement of warnings prior to distribution of this product in interstate commerce and Defendant knew or should have known this product created a high risk of dangerous conditions that could cause great injury or death.

23. Defendant was negligent in the design, manufacture, testing, advertising, warning, marketing and sale of the Ash Handler (or "product") in the following ways:

4

a. Failing to use due care in the design of the product to avoid risk to Plaintiff when it was being used as directed by the manufacturer or during conduct that was foreseeable and intended in the ordinary course of the product's use;

b. Improperly designing the product;

c. Failing to use due care in the manufacture of the product to avoid risk to Plaintiff when it was being used as directed by the manufacturer or during conduct that was foreseeable and intended in the ordinary course of the product's use;

d. Improperly manufacturing the product;

e. Failing to adequately test the product for possible dangers prior to placing it into the stream of commerce;

f. Failing to accompany or equip the product with a proper warning regarding all possible dangers associated with the use of the product, including the risk posed by the open water tank;

g. Failing to provide adequate warnings and/or instructions to Plaintiff and other users of the product;

h. Failing to warn or adequately warn Plaintiff or the public orally or in writing about the possibility of being burned by scalding liquid while standing near the product; and

i. In such other and further ways to be determined through discovery.

24. Defendant marketed and sold the Ash Handler despite the fact Defendant knew or should have known that the product caused unreasonable, dangerous, and deadly situations and

possibilities that many users would be unable to foresee and/or prevent.

25. Defendant knew or should have known that consumers and users such as Plaintiff would suffer foreseeable injuries as a result of Defendant's failure to exercise ordinary care as described above.

26. At all material times, Defendant knew or should have known of the defective nature of its product as set forth herein, and continued to design, manufacture, market, sell, resell, and advertise the product to maximize sales and profits at the expense of public health and safety that evidences a grossly negligent, reckless, willful and wanton disregard for human life.

27. Defendant exhibited such a want of care as to establish its actions were a result of gross negligence, carelessness, recklessness, willful and wanton conduct, and conscious disregard of foreseeable harm to Plaintiff, thereby entitling Plaintiff to punitive damages.

28. As a direct and proximate result of Defendant's conduct, Plaintiff suffered and will continue to suffer injury, harm, damages, and economic loss.

## FOR A SECOND CAUSE OF ACTION
**(Strict Liability for Defective Design, Defective Manufacturing, and Failure to Warn)**

29. Plaintiff incorporates by reference all preceding paragraphs and allegations of this complaint as if fully set forth here.

30. At all times relevant hereto, Defendant was engaged in the business of promoting, manufacturing, marketing, distributing, designing, and selling industrial equipment, including the Ash Handler.

31. Defendant had a duty to design, test, manufacture, assemble, and inspect its products so as to not subject purchasers and users to an unreasonable risk of harm by a product that was in a defective and unreasonably dangerous condition.

32. The Ash Handler that injured Plaintiff was sold, marketed, and placed in the stream

of commerce by Defendant and was defective and unsafe for its intended purpose at the time it left Defendant's control.

33. The Ash Handler that injured Plaintiff was in substantially the same condition on the day Plaintiff was injured as when it was manufactured and sold.

34. Defendant promoted, marketed, distributed, and sold the Ash Handler (the "product") in an unreasonably dangerous condition by:

    a. Using defective design that failed to enclose the product's water tank or employed other defects that might be shown in discovery;

    b. Improperly manufacturing the product by failing to enclose the opening of the water tank or failing to adhere to other specifications that might be shown in discovery;

    c. Failing to warn the product's users by equipping the product with sufficient warnings or instructions to alert potential users of the dangers posed by the product; and

    d. In such other and further ways to be determined through discovery.

35. Safer alternative designs existed at the time the Ash Handler was manufactured, such as a design which would have incorporated a tank enclosure like the design Defendant provided Norbord following the incident.

36. The injuries and damages suffered by Plaintiff were directly and proximately caused by the defective and unreasonably dangerous condition of the Ash Handler in violation of South Carolina Code § 15-73-10.

### FOR A THIRD CAUSE OF ACTION
**(Breach of Express Warranty of Merchantability)**

37. Plaintiff incorporates by reference all preceding paragraphs and allegations of this

complaint as if fully set forth herein.

38. Defendant expressly warranted the Ash Handler for safe use.

39. Defendant's warranty extends to Plaintiff as a natural person expected to use or be affected by the Ash Handler.

40. The Ash Handler does not conform to these express representations because it is not safe and poses life-threatening risks and/or consequences. As a direct and proximate result of the breach of said express warranties, Plaintiff has suffered and will continue to suffer damages as alleged herein.

41. As a direct and proximate result of the breach of the express warranty of merchantability by the Defendant, Plaintiff suffered and will continue to suffer damages, injury, harm, and economic loss as alleged herein.

## FOR A FOURTH CAUSE OF ACTION
### (Breach of Implied Warranties)

42. Plaintiff incorporates by reference all preceding paragraphs and allegations of this complaint as if fully set forth herein.

43. Defendant impliedly warranted prospective purchasers and users, including Plaintiff, that the Ash Handler was safe, merchantable, and fit for the ordinary purposes for which such goods are used.

44. Plaintiff reasonably relied upon the skill and judgment of Defendant as to whether the Ash Handler was of merchantable quality and safe and fit for its intended use.

45. The Ash Handler was not of merchantable quality or safe or fit for its intended use because the product was defective and unreasonably dangerous.

46. As a direct and proximate result of the breach of implied warranties by Defendant, Plaintiff suffered and will continue to suffer damages, injury, harm, and economic loss as alleged.

## JURY DEMAND

Plaintiff respectfully demands trial by jury on all claims so triable.

## PRAYER

WHEREFORE, Plaintiff Cephus B. Glenn prays for:

i. Judgment against Defendant on all claims set forth here;

ii. An award of actual and consequential damages from Defendant in an amount to be determined by the jury and sufficient to compensate Plaintiff for the damages he has incurred;

iii. An award of punitive damages in an amount to be determined by the jury and sufficient to impress upon Defendant the seriousness of its conduct and to deter similar conduct in the future;

iv. An award of attorneys' fees and costs in an amount to be determined by the Court; and

v. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

s/ Richard A. Harpootlian_____
Richard A. Harpootlian (Fed ID No. 1730)
Christopher P. Kenney (Fed ID No. 11314)
RICHARD A. HARPOOTLIAN P.A.
1410 Laurel Street
Post Office Box 1090
Columbia, South Carolina 29202
Phone (803) 252-4848
Facsimile (803) 252-4810
rah@harpootlianlaw.com
cpk@harpootlianlaw.com

ATTORNEYS FOR PLAINTIFF
CEPHUS B. GLENN

June 7, 2017
Columbia, South Carolina.